IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST I, | § § § § § | |
| *Plaintiff,* | § § | 5-22-CV-01371-DAE |
| vs. | § § | |
| ANDREA YVONNE AYCOCK, | § § § | |
| *Defendant.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge David Alan Ezra:**

This Report and Recommendation concerns Plaintiff Wilmington Savings Fund Society, FSB, as Trustee of Stanwich Mortgage Loan Trust I (Wilmington)'s Motion for Default Judgment. *See* Dkt. No. 25. The District Court referred this motion for resolution pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Sept. 28, 2023, Text Order. The Court has authority to enter this order pursuant to 28 U.S.C. § 636(b)(1).

For the reasons stated below, Plaintiff's Motion, Dkt. No. 25, should be **GRANTED.**

**Factual and Procedural Background**

This mortgage-foreclosure case is complicated by confusion about the Defendant's name and relationship to the original borrower. On March 2, 2009, Andrea Y. Aycock, Defendant Andrea Yvonne Aycock's mother, executed a note secured by real property located at 2311 Cloudbait View, Converse, Texas 78109. Dkt. No. 19 (live complaint) ¶¶ 5, 16-17. The loan was

recorded in the official public records of Bexar County, Texas. *Id.* ¶ 17. Wilmington did not originate the loan but acquired it via assignment in 2021. *Id.* ¶¶ 17-20.

The elder Aycock apparently made all mortgage payments for the property until her death on May 4, 2020. *See id.* ¶ 2. According to public records, the elder Aycock died intestate, and no probate was executed after her death. *Id.* ¶¶ 2-4. Without a will, the property and its associated debt passed to the elder Aycock's daughter and sole heir, Defendant Andrea Yvonne Aycock, under Texas law.[1] *Id.* ¶¶ 2-4, 21. After inheriting the property, Defendant made the required mortgage payments up to December 1, 2020, when she defaulted on the loan. Dkt. No. 19, Exhibit E. On July 14, 2022, Wilmington, acting through its mortgage servicer Carrington Mortgage Services, LLC, notified Defendant of the past due amount, and provided notice of its intent to foreclose on the encumbered property. *Id.* Approximately one month later, on August 17, 2022, Wilmington sent Defendant a notice of acceleration on the outstanding loan amount. *Id.*, Exhibit F. Defendant did not respond to the two notices or make payments to become current on the loan.

The facts of this case weren't always so clear-cut. Plaintiff Wilmington originally filed this foreclosure action on December 12, 2022, listing a "Yvonne Y. Aycock" as the original borrower. Dkt. No. 1 at 1. The original complaint alleged that Yvonne Y. Aycock had passed away, and that under Texas law, the property passed to her daughter and "alleged heir," Andrea Yvonne Aycock. Dkt. No. 1 at 1-2. The original complaint did not explain how these facts were determined.

---

[1] The record reflects that both Decedent and Defendant shared the same name, a fact confirmed by members of Defendant's extended family. Dkt. No. 16-1 at 15. For the sake of clarity, this Report and Recommendation follows the naming conventions used in the Complaint and other documents filed by Wilmington: "Andrea Y. Aycock" refers to the Decedent and original signatory to the mortgage, while "Andrea Yvonne Aycock" refers to the Defendant, Decedent's daughter and sole heir.

Further muddying the waters, Plaintiff Wilmington served the original complaint at the property encumbered by the mortgage, leaving it with a Micheline J. Aycock; Wilmington never explained Micheline J. Aycock's relationship to either the original borrower or her alleged heir. *See* Dkt. No. 6. No defendant responded, and Wilmington filed its first Motion for Default Judgement after obtaining a Clerk's Entry of Default. *See* Dkt. Nos. 10 & 11. Wilmington attached a document to that first Motion for Default purporting to show that no person named "Andrea Aycock" was on active-duty military status. Dkt. No. 14.

To clarify the parties and its jurisdiction, the Court issued a Show Cause order directing Wilmington "to explain . . . how it determined that the borrower [was] deceased, who the alleged heirs were, and whether there was any probate opened for the decedent borrower's estate." Dkt. No. 15 at 4. The Order further directed Wilmington to "amend the Complaint and reattempt service on a properly named defendant" if appropriate. *Id*. Wilmington responded to the order, clarifying the parent-daughter relationship between Andrea Y. Aycock and Andrea Yvonne Aycock. Dkt. No. 16 ¶¶ 34-36. Wilmington also explained that its references to Yvonne Y. Aycock in the original complaint were scrivener's errors, and that Micheline J. Aycock was the Defendant's aunt and sister of decedent Andrea Y. Aycock. *Id*. ¶¶ 11-13, 29-32. Wilmington then filed an amended complaint clarifying the parties and the Court's jurisdiction. *See* Dkt. No. 19. Wilmington served the amended complaint, currently the live complaint, personally on Defendant Aycock and in response the Court mooted Wilmington's first Motion for Default Judgment. *See* Dkt. No. 22; July 5, 2023, Text Order. The live complaint asks the Court to enter judgment granting:

    a. A declaration that Plaintiff is the owner and holder of the Note and beneficiary of the Security Instrument, and that Plaintiff is a mortgagee as that term is defined under Texas Property Code section 51.0001(4), and is authorized to enforce the power of sale in the Security Instrument through foreclosure of the Property;

3

    b. A declaration that due to a breach of the Loan Agreement, Plaintiff's statutory probate lien against the Property shall be enforced by a non-judicial foreclosure at public auction—or alternatively, a judgment for judicial foreclosure—and that through the foreclosure or auction the Defendant is divested, and the purchaser at foreclosure sale is vested, of all of Decedent's right, title, and interest to the Property;

    c. A writ of possession against any Occupant of the Property if the Occupant fails or refuses to leave the Property after foreclosure or auction;

    d. Attorney fees and costs of suit, not as a personal judgment against the Defendant, by [sic] only as an additional debt secured by the Security Instrument; *and*

    e. All other relief, in law and in equity, to which Plaintiff is entitled.

Dkt. No. 19 at 10-11.

Defendant Andrea Yvonne Aycock did not file an answer or otherwise respond. Wilmington then requested and received a renewed Clerk's Entry of Default before filing the Motion for Default Judgment presently before the Court. Dkt. Nos. 24 & 25. To date, Defendant Andrea Yvonne Aycock has not appeared in the case.

## Legal Standard

Motions for default judgment are governed by Federal Rule of Civil Procedure 55, which requires the clerk to enter a party's default when that party "has failed to plead or otherwise defend" the lawsuit. Fed. R. Civ. P. 55(a). Once the clerk enters the default, the party filing the motion must "apply to the court for a default judgment" if, as here, the party seeks an amount uncertain or asks for declaratory or injunctive relief. *See* Fed. R. Civ. P. 55(b). Essentially, the entry of the default is a three-step process: (1) a party's default, (2) the clerk's entry of default, and (3) the Court's entry of default judgment. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *Jefferson v. La. Dep't of Pub. Safety & Corr.*, 401 F. App'x 927, 929 (5th Cir. 2010). Further, Rule 54 requires that a "default judgment [] not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (footnote omitted). The decision of whether to issue a default judgment is discretionary, and any doubts "must be resolved in favor of the defaulting party." *Boost Worldwide, Inc. v. Cobos*, No. EP-12-CV-0342-KC, 2012 WL 12881968, at *2 (W.D. Tex. Dec. 21, 2012); *see also Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001); *Davis v. Parkhill-Goodloe Co.*, 302 F.2d 489, 495 (5th Cir. 1962).

A party requesting a default judgment "is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quotation marks omitted). Rather, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975). When considering whether such a basis is presented, a court accepts as true the complaint's well-pleaded factual allegations—except regarding damages—and must determine whether those pleaded facts state a claim upon which relief may be granted. *See id.*; *see also United States ex rel. M-Co. Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

Because this case is brought under federal diversity jurisdiction, as detailed below, the Court must apply state substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). This Court sits in the Western District of Texas, meaning Texas substantive law applies.

Finally, when considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012). Plaintiff Wilmington does not request damages but instead asks for reasonable attorney's fees and

5

costs of suit. Dkt. No. 25. The Court examines its jurisdiction, Aycock's liability, and Wilmington's request for fees and costs of suit below.

## Analysis

Plaintiff Wilmington's Motion for Default Judgment should be granted because the Court has jurisdiction over the claims, the live complaint establishes Defendant Aycock's liability, and Plaintiff Wilmington is entitled to the relief it requests, including reasonable attorney's fees.

### A. The Court has Jurisdiction over this Action.

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001). The Court addresses both requirements and determines it has jurisdiction.

    **1.** *The Court has subject matter jurisdiction.* The Court has subject matter jurisdiction over this action under diversity jurisdiction, which requires an amount in controversy in excess of $75,000.00 and complete diversity of citizenship. 28 U.S.C. § 1332. According to the complaint, the value of the property in question exceeds $190,000.00, meeting the $75,000.00 threshold. Dkt. No. 19 ¶ 11. Regarding citizenship, Defendant Aycock is allegedly a citizen of Texas. *Id*. ¶ 4. Plaintiff Wilmington, meanwhile, is a citizen of Delaware, establishing complete diversity. *Id*. ¶¶ 7; *see also Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465-66 (1980) (holding that a trust's citizenship is determined by the citizenship of its trustee), *Wachovia Bank v. Schmidt*, 546 U.S. 303, 946-952 (2006) (holding that the citizenship of a national banking association is determined by the location of its main office, as set out in its articles of confederation).

Because this case involves decedent Andrea Y. Aycock's estate, the Court must examine whether the probate exception to its subject matter jurisdiction applies. "[T]he probate exception

reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006). Under the probate exception, "while federal courts may entertain suits in favor of creditors and other claimants against a decedent's estate to establish their claims, federal courts have no jurisdiction to *administer* an estate." *Ocwen Loan Servicing LLC v. Lane*, No. A-15-CA-244-SS, 2015 WL 7301182 (W.D. Tex. Nov. 18, 2015) (internal citations and quotations omitted) (cleaned up) (emphasis added). Here, the probate exception does not apply because the Court is dealing with creditor claims rather than the administration of decedent Andrea Y. Aycock's estate, which was resolved under Texas law, as detailed below. The Court therefore has subject matter jurisdiction.

        **2.**    *The Court has personal jurisdiction over the parties.* This Court also has personal jurisdiction over the parties because Plaintiff Wilmington properly served Defendant Aycock in accordance with federal procedural rules. "[S]ervice of process . . . initiates a defendant's obligations in a civil suit." *Jefferson v. Delgado Cmty. Coll. Charity Sch. Of Nursing*, 602 F. App'x 595, 598 (5th Cir. 2015) (per curiam). Absent proper service of process, a court lacks personal jurisdiction over a defendant, and any default judgment against the defendant would be void. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999). Pursuant to the Federal Rules of Civil Procedure, the plaintiff bears the burden of ensuring that the defendant is properly served with a copy of the summons and the complaint within ninety days of filing the complaint. *See* Fed. R. Civ. P. 4(c)(1), (m). One way that service is completed in federal court is by "delivering a copy of the summons and . . . complaint to the individual personally." Fed. R.

Civ. P. 4(e)(2)(A). The docket shows that Plaintiff Wilmington personally served Defendant on August 1, 2023. Dkt. No. 22. Therefore, the Court has personal jurisdiction over the defendant.

**B.      Defendant Aycock is Liable.**

Defendant Aycock is liable in this action because she defaulted on Wilmington's claims and Wilmington is entitled to default judgment.

  **1.**  *Defendant Aycock defaulted on Plaintiff Wilmington's claims.* Defendant Aycock was properly served and yet failed to appear or respond. The Federal Rules of Civil Procedure provide that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The record reflects that on August 8, 2023, Plaintiff Wilmington personally served Defendant Aycock. Dkt. No. 22. Aycock has not appeared or responded. *See* Dkt. No. 25. Accordingly, the Clerk properly entered default.

  **2.**  *Plaintiff Wilmington is entitled to Default Judgment against Defendant Aycock.* Plaintiff Wilmington is entitled to default judgment against Defendant Aycock because it has established that Defendant Aycock is the indebted party and has laid out "a sufficient basis in the pleadings for the [Court to enter] the judgment." *Nishimatsu*, 515 F.2d at 1206.

***Defendant Aycock is a mortgagee and Plaintiff Wilmington a mortgagor under Texas Law.*** Under the Texas Property Code, a "mortgagee" includes the "the grantee, beneficiary, owner, or holder of a security instrument," while a "mortgagor means the grantor of a security instrument [i.e., a mortgage]." Tex. Prop. Code 51.001(4)(A), (5).

Defendant Aycock is a mortgagee because she inherited the property and any of its associated debt upon the death of her mother. The record shows that Aycock's mother, the original signatory to the mortgage, died intestate and without a probate. Dkt. No. 19 ¶¶ 2-4. Under Texas

law, "the estate of a person who dies intestate vests immediately in the person's heirs at law," Tex. Est. Code § 101.001, and "subject to the payment of the debts of the decedent." *Id*. § 101.051(a)(1). Defendant Aycock is decedent Andrea Y. Aycock's only daughter and sole heir. Dkt. No. 16, Exhibit A-4 (heirship investigation report). Therefore, the subject mortgage passed to Defendant Aycock upon her mother's death, making Aycock the current holder of the mortgage and a mortgagee under Texas law.

Plaintiff Wilmington is a mortgagor because it is the current holder of the security instrument after it acquired the instrument in 2021. Dkt. No. 19 ¶¶ 17-20.

***Plaintiff Wilmington meets the four requirements to foreclose on a property under Texas Law.*** The requirements for foreclosure under Texas law are as follows:

> To foreclose under a security instrument in Texas with a power of sale, the lender must demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under Art. 16, § 50(a)(6) of the Texas Constitution; (3) [the mortgagee is] in default under the note and security instrument; and (4) [the mortgagee] received notice of default and acceleration. TEX. PROP. CODE § 51.002.

*Huston v. U.S. Bank Nat. Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013), *aff'd*, 583 F. App'x 306 (5th Cir. 2014). Regarding the fourth requirement, Texas law requires that two notices be sent, first a notice of default with a 20-day window for the borrower to cure, then a notice of sale, again with a 20-day window for the borrower to cure, before the lender can schedule the sale. *See* Tex. Prop. Code § 51.002(b), (d). The specific terms of Aycock's security instrument required Wilmington to provide at least 21 days' notice for her to cure any default. Dkt. No. 19, Exhibit B ¶ 18.

All four of these elements are met. First, a debt exists, as evidenced by the deed of trust and note securing the subject property, signed by decedent Andrea Y. Aycock. *Id*., Exhibits A and B. Second, that debt was secured by a lien "governed by [f]ederal law and the law of the

9

jurisdiction in which the Property is located." *Id.*, Exhibit B ¶ 14. Because the subject property is located in Texas, the lien was created subject to Art. 16, § 50(a)(6) of the Texas Constitution. Third, Defendant Aycock was in default as evidenced by her failure to pay on the note from December 1, 2020, to present. Dkt. No. 19 ¶¶ 24-25, Exhibit E. Fourth and finally, Wilmington sent Defendant Aycock a notice of default and acceleration on July 14, 2022, and notice of its intent to foreclose on August 17, 2022. *Id.*, Exhibits E and F. Defendant Aycock has not made any payments since those notices were provided and no foreclosure has yet occurred, thus satisfying the period-of-notice requirements for default and foreclosure. Because Wilmington adequately pled all four elements of a foreclosure action under Texas law, a judgment of foreclosure is appropriate. Wilmington should be allowed to proceed with a public-auction foreclosure following the procedure articulated in the mortgage agreement. *See id.*, Exhibit B ¶ 18. Further, should an occupant of the property refuse to leave after the foreclosure, Wilmington is entitled to a writ of possession to physically recover the property. *See Ditech Fin., L.L.C. v. Naumann*, 742 F. App'x 810, 815 (5th Cir. 2018) ("Issuance of the writ [of possession] is an appropriate means to enforce an order of foreclosure of a mortgage in favor of a purchaser.")

      **C.**    **Plaintiff Wilmington Is Entitled to Reasonable Attorney's Fees, Plus Costs of Suit.**

In its motion, Wilmington requests "reasonable and necessary attorney's fees . . . . to be determined by subsequent motions practice," and court costs. Dkt. No. 25 ¶ 23, at 6. For mortgages formed under Article 16 of the Texas Constitution, "the mortgagor is not personally liable for attorneys' fees" though "the mortgagee may recover its attorneys' fees, if permitted under the relevant contract, against the mortgaged party after a foreclosure sale." *Huston*, 988 F. Supp. 2d at 741 (citing *In re Mullin*, 433 B.R. 1, 17 (Bankr. S.D. Tex. 2010)). Additionally, the Federal Rules of Civil Procedure state that "costs—other than attorney's fees—should be allowed to the

prevailing party." Fed. R. Civ. P. 54(d)(1). Here, the security instrument states that "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided [in the mortgage agreement] including, but not limited to, reasonable attorneys fees and costs of title evidence." Dkt. No. 19, Exhibit B ¶ 18. By initiating and prevailing in this action, Wilmington has met the requirement for recovery of fees and court costs.

Wilmington should now follow the requirements of Local Rule CV-54 to request recovery of its fees and costs, unless the District Court orders a different procedure. *See* Local Rule CV-54; Fed. R. Civ. P. 54(d)(2); *see also Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996); *Myart v. Glosson*, No. SA-14-CV-831-XR, 2015 WL 4395165, at *4 (explaining, "*Richardson* was a lawsuit brought by a foreclosed borrower against a bank that foreclosed and sought to evict him. The court reversed the trial court and held that the bank was entitled to damages under Fed. R. Civ. P. 54(d)(2), and that attorneys' fees in that context need not be proven at trial like other damages under Texas law." (footnote omitted)). Presumably, Wilmington will seek an order directing that the fees be paid out of any foreclosure proceeds.

## Conclusion and Recommendation

For the reasons discussed above, it is recommended that Plaintiff Wilmington's Motion for Default Judgment, Dkt. No. 25, should be **GRANTED**.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is

modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 6th day of August, 2024.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE